**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MARY DUKES, on behalf of
herself and on behalf of all others
similarly situated,**

     **Plaintiff,**

**v.**                          **CASE NO.: 8:18-cv-02176-EAK-JSS**

**AIR CANADA,**

     **Defendant.**
_____/

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY
TRIAL**

     Plaintiff, MARY DUKES, on behalf of herself and the Putative Classes set forth

below, files the following First Amended Class Action Complaint against AIR CANADA

("Defendant"), pursuant to the Fair Credit Reporting Act ("FCRA").

**PRELIMINARY STATEMENT**

     1.     Defendant operates a domestic and international airline with

approximately 30,000 employees.[1]

     2.     Defendant's hiring practice includes it obtaining and using information in

consumer reports to conduct background checks on prospective employees and existing

employees, and relies on such information as a basis for adverse employment action.  In

this case, Defendant used a national consumer reporting agency, Justifacts Credential

Verification, Inc., to procure consumer reports on Plaintiff and the putative class members

---

[1] https://www.aircanada.com/content/dam/aircanada/portal/documents/PDF/en/annual-report/2017_ar.pdf.

she seeks to represent.

3.      The FCRA, 15 U.S.C. §1681b makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose.  Such use becomes lawful if and only if the "user" – in this case Air Canada – first complied with the statute's strict disclosure and authorization requirements.

4.      Defendant willfully violated these requirements in multiple ways and in systematic violation of Plaintiff's rights, and as to the rights of the other putative class members.

5.      Defendant takes adverse action against applicants and employees, including Plaintiff here, on the basis of information contained in background reports without first providing those individuals with a copy of the report and a summary of their rights. This conduct violates 15 U.S.C. § 1681b(b)(3).

6.      Additionally, Defendant violated the FCRA's requirement that, prior to procuring a consumer report for employment purposes, a prospective employer must disclose that it is going to procure a consumer report "in a document consisting solely of the disclosure."  This conduct violates 15 U.S.C. §1681b(b)(2)(A)(i).  For example, Defendant's disclosure includes a liability waiver.  Courts throughout the country, including in the Middle District of Florida, have long held that have held that § 1681b(b)(2)(A)(i) prohibits the inclusion of a waiver of rights in a form used by an employer to disclose to a prospective employee his or her rights under the FCRA.

7.      Finally, Defendant violated Section 1681b(b)(2)(A)(ii) of the FCRA which prohibits any person from procuring a consumer report, or causing a consumer report to be procured, for employment purposes unless the consumer whose report is being procured

has authorized such procurement in writing. The authorization requirement follows the disclosure requirement of § 1681b(b)(2)(A)(i) and presupposes that the authorization is based upon a valid disclosure.  Without a valid disclosure, there can be no valid authorization.

8.     Plaintiff followed the typical application procedure put in place by Defendant to become an employee of Defendant's airlines, making Defendant's practices in violation of the FCRA repeated and systematic and, thus, the claims at issue in this Amended Complaint ripe for class treatment.

## JURISDICTION AND VENUE

9.     Defendant invoked this Court's jurisdiction by asserting that this case is "removable to the United States District Court for the Middle District of Florida because the Complaint presents a federal question. Specifically, 28 U.S.C. § 1331 provides that district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. See 28 U.S.C. § 1331.  Plaintiff's FCRA claims provide the basis for this Court's subject matter jurisdiction."  (Doc. 1, pp. 1-2).

10.     Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391.

## PARTIES

11.     Plaintiff is a citizen of Florida and former employee of Defendant.  She is a natural person and is a consumer as defined by the FCRA, 15 U.S.C. §§ 1681 *et seq*., at §1681a(c).

12.     Defendant is a corporation and a user of consumer reports as contemplated by the FCRA, at 15 U.S.C. § 1681b.

3

## CLASS ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

### *Defendant's Willful Violation of 15 U.S.C. § 1681b(b)(3)*

13.     Defendant takes adverse action against applicants and employees, including Plaintiff here, on the basis of information contained in background reports without first providing those individuals with a copy of the report and a summary of their rights. This conduct violates 15 U.S.C. § 1681b(b)(3).

14.     Plaintiff followed Defendant's hiring process and applied to work for Defendant on approximately April 30, 2018.

15.     Plaintiff initially completed an online job application for Defendant available to all prospective candidates online as part of Defendant's uniform hiring process.

16.     After completing her application, Defendant told Plaintiff she was hired subject to completion of a background check.

17.     Following completion of the background check in late April or early May of 2018 Defendant told Plaintiff that the job offer was immediately revoked due to some issue with her consumer report.  Defendant failed to first provide Plaintiff with a copy of the consumer report it obtained on her from its consumer reporting agency prior to taking adverse action against her.

18.     In doing so Defendant violated 15 U.S.C. § 1681b(b)(3)(A) because, before taking adverse action against Plaintiff, it did not provide her either with a copy of the report or with the summary of her rights required under 15 U.S.C. § 1681b(b)(3)(A).  Thus, Plaintiff did not receive two statutorily mandated documents and information prior to Defendant taking adverse action against her.

19.     In accordance with the FCRA's requirements, like all consumer reporting

4

agencies must, the consumer reporting agency from which Defendant acquired consumer reports during the five years preceding the filing of this Complaint, Justifacts, required Defendant to certify that it would comply with the FCRA's pre-adverse action notice requirements if those requirements became applicable. *See* 15 U.S.C. § 1681b(b)(1).

20.     Thus, Defendant ***knew*** that it had an obligation to provide current or prospective employees with copies of their reports and summaries of their rights prior to taking adverse action based in whole or in part on a consumer report.

21.     Defendant knowingly and recklessly disregarded the plain meaning of 15 U.S.C. § 1681b(b)(3), as well as guidance from the Federal Trade Commission and numerous court decisions, stating that the failure to provide current or prospective employees with a copy of their consumer reports and a summary of their rights prior to taking adverse action against them based in whole or in part on the contents of those reports is a violation of the FCRA.

22.     By systematically failing to provide Plaintiff and other employees and applicants with pre-adverse action notice, including a copy of the report and a summary of their rights, prior to taking adverse action against them, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(3).

23.     Plaintiff experienced a concrete injury due to Defendant's failure to provide the required pre-adverse action notice because she was unable to explain the contents of the report to Defendant.   In accordance with the FCRA's pre-adverse requirements, Plaintiff should have been given the chance to explain the contents of her consumer report to Defendant before being fired.  Here, Air Canada's hiring and background check process denied Plaintiff that important opportunity.   Indeed, this is the very kind of concrete injury

the FCRA's pre-adverse action requirement was designed to protect against.

24.     Additionally, Plaintiff suffered a concrete informational injury arising from Defendant's failure to provide the pre-adverse action notice required by 15 USC § 1681b(b)(3). Pursuant to § 1681b(b)(3), Plaintiff was entitled to receive certain information at a specific time, namely a copy of her report and a summary of her rights, before Defendant made the decision to terminate her employment.  Defendant was required to provide Plaintiff with this information, and to give her a reasonable amount of time to explain any issues contained in his report (typically 5 days), before Defendant took adverse action against her.  By depriving Plaintiff of this information, Defendant deprived Plaintiff of the ability to review the adverse information about her and explain to Defendant what had happened to her in her past that gave rise to these issues.

25.     Defendant also invaded Plaintiff's privacy by using her private information in a manner that it was not entitled to pursuant to the FCRA. 15 U.S.C. §1681b(b) contains restrictions on the circumstances in which a consumer report can be used, generally for an employment purpose and specifically as a basis for an adverse employment action. One of those conditions is that a report may only be used as a basis for adverse employment action when the consumer to whom the report relates has previously been provided with a copy of the report and a summary of the consumer's rights. Absent the fulfillment of these conditions, the employer is not allowed to rely on the private information contained in the report. By using Plaintiff's information in a manner not allowed by law, Defendant invaded her privacy.

26.     Plaintiff also suffered economic harm in the form of job loss and lost pay as a result of Defendant's failure to provide pre-adverse action notice.

6

27.     Congress elevated the procedural rights guaranteed by § 1681b(b)(3) to the status of legally cognizable injury, and that violations of that section created a risk of harm to those concrete interests. These interests included obtaining key information from the background report, contesting the accuracy of the background report, and having the opportunity to discuss any negative items in the background report with the prospective employer.

28.     Here, the crux of the injury here is not whether the information in Plaintiff's consumer report is accurate, but whether Defendant deprived Plaintiff of her right to information before rescinding its offer of employment.  Defendant did precisely that as to Plaintiff and those putative class members who, in following Defendant's hiring process, also received no pre-adverse notice prior to Defendant taking adverse action against them without providing pre-adverse notice, making Plaintiff's pre-adverse claim ripe for class treatment.

### *Defendant's Willful Violation of 15 U.S.C. § 1681b(b)(2)*

29.      Besides violating § 1681b(b)(3), Defendant also willfully violated 15 U.S.C. § 1681b(b)(2)(i) and (ii).   Specifically, Defendant is liable for willfully violating Section 1681b(b)(2)(i) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

30.     The FCRA violative disclosure document upon which Defendant relied to procure Plaintiff's consumer report is not a stand-alone disclosure because of the following:

- The inclusion of an impermissible release of liability;

- A blanket authorization allowing Defendant to view information on Plaintiff from nearly every source imaginable, including all "educational, background, military record, motor vehicle records, criminal records, and credit history through an investigative or credit agency bureau of your choice.";

- A statement that Justifacts Credentials Verification, Inc., will perform the background check but, then, confusingly, applicants must agree that the background check will be performed by "an investigative or credit agency or bureau of your choice";

- At least three different state law notices informing consumers of their additional rights under California, Massachusetts, Minnesota, and Oklahoma (none of which impact the named Plaintiff here);

- A statement indicating that applicant's consent is indefinite throughout their employment unless they revoke or cancel their consent by sending a signed letter or statement to the Defendant;

- Question relating to whether an applicant has been convicted of a misdemeanor and/or felony and, if so, a blank requiring applicants to explain; and

- Blanks requiring applicants to provide their addresses for the last 7 years, email address, Social Security Number, and Driver's License information.

31.     In violation of 15 U.S.C. §§ 1681b(b)(2)(A)(i), Defendant unlawfully inserted a liability release provision into its disclosure form. Indeed, the extraneous and illegal information contained within the form confused Plaintiff, and misled her as to whether she had any recourse against Defendant, or any entity, the FCRA violations she experienced (because of the waiver).  Plaintiff would not have consented to the illegal background check Defendant conducted on her had she realized that her rights under the FCRA were being violated, including as to the FCRA's stand-alone requirement and as to its prohibition against waivers in the disclosure document.

32.     Defendant's decision to include a liability release provision in its disclosure

8

form is contrary to both the plain language of the FCRA and the unambiguous regulatory guidance provided by the FTC.

34.     Courts that have addressed liability waivers placed in disclosure forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *See, e.g., Singleton v. Domino's Pizza, L.L.C.*, No. DKC 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (Stating that "both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Speer v. Whole Foods Market,* No. 8:14–cv–3035, 2015 WL 1456981 at *3 (M.D. Fla. Mar. 30 2015) (denying motion to dismiss FCRA claim, given that the disclosure form contained a release and other extraneous information); *Schoebel v. American Integrity Ins. Co. of Fla.*, No. 8:15–cv–380, 2015 WL 3407895 at *6 (M.D. Fla. May 27 2015) (holding that if a disclosure contains a release, it violates the FCRA).

35.     Because Defendant's disclosure form includes a vast and limitless release of information that applies to third parties' provision of information, it violates the FCRA. State and federal agencies, schools, financial institutions, health care providers, and other entities, including the military, all of which fall within the broad release language included in the form, are subject to specific privacy laws which regulate nonpublic information. For example, the Family Educational Rights & Privacy Act, 20 U.S.C. § 1232g; 34 CFR Part 99, protects school records from disclosure absent consent from the student. Similarly, the Gramm-Leach-Bliley Act requires financial institutions to safeguard nonpublic

information at 15 U.S.C. §§ 6801-6809, and the Health Insurance Portability and Accountability Act, which sets forth its Privacy Rule at 45 CFR Part 160, and Subparts A and E of Part 164, requires covered  institutions.  Defendant's disclosure form, however, purports to waive these carefully promulgated protections that protect the privacy of personal information held by the Government, and others.

36.     Defendant knowingly and recklessly disregarded the plain meaning of 15 U.S.C. § 1681b(b)(2)(A), as well as guidance from the Federal Trade Commission and numerous court decisions available to it for many years.

37.     Defendant knew or should have known that it had an obligation to provide a stand-alone disclosure before procuring a consumer report, but failed to do so.

38.     Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

39.     Plaintiff suffered an informational injury because Defendant failed to provide her with information to which she was entitled to by statute, namely a stand-alone FCRA disclosure form and a summary of her rights under the FCRA.  Here, that injury further resulted in Plaintiff not knowing exactly what her rights were as a result of Defendant revoking its job offer to her based on information contained in her report, culminating in both a job loss and lost pay.

40.     The FCRA makes it unlawful to 'procure' a report without first providing the proper disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A., Inc.*, 114 F. Supp. 3d 868, 869 (N.D. Cal. 2015).  Plaintiff's consumer reports

contained a wealth of extremely private information which Defendant had no right to access absent a specific Congressional license to do so. The consumer reports Defendant obtained on Plaintiff and the putative class members included, *inter alia*, Plaintiff's date of birth, partial social Security Number, address history, phone number, e-mail address, and information about her criminal and driving background. By procuring reports containing this private information without complying with first complying with the FCRA's disclosure requirements, Defendant illegally invaded Plaintiff's right to privacy.

41.     Defendant's above violations created a risk of harm that Plaintiff would be harmed in precisely the way Congress was attempting to prevent when it mandated what disclosures employers must make to applicants.  Without accurate source information as to what to do if the information in their reports was inaccurate, a consumer is left confused as to where to go to correct erroneous data contained in a report and be unable to know whether any erroneous data would find its way into future consumer reports.  Here, for example, after her job offer was revoked Plaintiff was unaware of what her rights under the FCRA were *because* she had not received all statutorily required information, including a compliant disclosure document, as well as the pre-adverse disclosure and summary of your rights under the FCRA.

42.     Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private.  *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 134 (3d Cir. 2015).  Congress's reasons for enacting the FCRA show that it intended that the law be construed to promote the credit industry's responsible dissemination of accurate and relevant information, and afford consumers the substantive right to receive certain

specified information, including a stand-alone disclosure *before* their consumer reports are obtained by prospective employers.  The resulting harm created by Defendant here involves a clear de facto injury, i.e., the unlawful disclosure of legally protected information.

43.     As a result of Defendant's above FCRA violations, and on behalf of herself and the Putative Classes, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA.

## **RULE 23 REQUIREMENTS**

44.     Plaintiff asserts claim in Count 1 on behalf of a putative Pre-Adverse Action Class defined as follows:

> Pre-Adverse Action Class:  All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint through the date of final judgment in this action who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

45.     Plaintiff asserts his claims in Counts 2 and 3 on behalf of a Putative Background Check Class defined as follows:

> Improper Disclosure and Authorization Class:  All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint through the date of final judgment and as to whom Air Canada used a non-compliant FCRA disclosure.

46.     Numerosity: The Putative Classes are so numerous that joinder of all Class members is impracticable.  Defendant regularly obtains and uses information in consumer reports to conduct background checks on prospective employees and existing employees, and frequently relies on such information, in whole or in part, as a basis for adverse employment action.  Likewise, given that Defendant claims to employ 30,000

people, it is more than reasonable to assume that Defendant's utilization of a non-compliant FCRA disclosure affected hundreds, if not thousands, of prospective job applicants.

47.     Typicality:    Plaintiff's claims are typical of the members of the Putative Classes. Defendant typically uses consumer reports to conduct background checks on employees and prospective employees.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, including Defendant's job application process and background check process utilizing Justifacts as its consumer reporting agency, resulting in common violations of the FCRA.  The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

48.     Adequacy:    Plaintiff will fairly and adequately protect the interests of the Putative Classes, and has retained counsel experienced in complex class action litigation.

49.     Commonality:  Common questions of law and fact exist as to all members of the Putative Classes and predominate over any questions solely affecting individual members of the Putative Classes, including but not limited to:

a)      Whether the specific Defendant's background check practices and/or procedures alleged in this case comply with the FCRA;

b)      Whether Defendant's standard FCRA disclosures complied with 15 U.S.C. §1681b(b)(2);

c)      Whether Defendant's violations of the FCRA were willful;

d)      The proper form of injunctive and declaratory relief.

13

50.     This case is maintainable as a class action because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.

51.     This case is maintainable as a class action because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

52.     Class certification is also appropriate because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, including Defendant's job application process and background check process utilizing Justifacts as its consumer reporting agency, resulting in common violations of the FCRA.

53.     Members of the Putative Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class

members' claims in a single forum.

54.     Plaintiff intends to send notice to all members of the Putative Classes to the extent required by Rule 23.

### FIRST CLAIM FOR RELIEF
**Failure to Provide Copy of Consumer Report in Violation of
FCRA
15 U.S.C. § 1681b(b)(3)(A)**

55.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

56.     Defendant used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the Pre-Adverse Action Class.

57.     Defendant violated the FCRA by failing to provide Plaintiff and other Pre-Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them at all or at least five business days before it took the action. See 15 U.S.C. § 1681b(b)(3)(A).

58.     The foregoing violations were willful.  Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Pre-Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).  Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant had available substantial written materials which apprised them of its duties under the FCRA.  Any reasonable employer knows about or can easily discover these mandates.

59.     Defendant's willful conduct is also reflected by, among other things, the following facts: multiple courts throughout the country have long held that by failing to provide prospective applicants with copies of their consumer report used to take adverse employment action against them at all or at least five business days before taking the action, an employer violates 15 U.S.C. § 1681b(b)(3)(A); Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, including access to court opinions from five years or more discussing 15 U.S.C. § 1681b(b)(3)(A) violations; there is no contemporaneous evidence that it determined that its conduct was lawful; Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally, the consumer reporting agency that provided Plaintiff's consumer report information to Defendant (Justifacts) has published numerous FCRA-related articles and compliance self-help materials and made them available to Defendant through its website, including as to pre-adverse notice.

60.     For example, according to the Justifacts website, https://www.justifacts.com/resourcetype/faqs/, the pre-adverse process its clients, including Defendant here, are supposed to follow is described below:

> The Pre-Adverse and Adverse Action letters are requirements of the FCRA. These letters allow an applicant to review adverse information and dispute any potential errors or issues with their background check.  A Pre-Adverse letter is going to include: a copy of the background check, FCRA Summary of Consumer Rights, and the CRA's (background check company) contact information. The object of this letter is to allow the applicant to dispute any inaccuracies in the report and for the CRA to take any necessary corrective

action to ensure that the information provided is fully accurate.  After sending a Pre-Adverse letter, employers must allow a "reasonable time" to pass before proceeding to the next step, the Adverse Action letter.  An Adverse Action letter is a notification informing an applicant that he/she has been denied employment based in whole or in part on the results of his/her background check. Again, included in the letter will be the completed background check, FCRA Summary of Consumer Rights, and the CRA's contact information.

61.     Defendant had access to but failed to follow the long-established pre-adverse notification requirement under the FCRA, making its violations here willful.

62.     Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

63.     Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**Failure to Make Proper Disclosure in Violation of FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(i)**

64.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

65.      Defendant used the consumer reports of the Plaintiff and each member of the Improper Disclosure Class without first providing the disclosures necessary to satisfy 15 U.S.C. § 1681b(b)(2)(A)(i).

66.     Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i).  Namely, in a stand-

alone document.

67.     The foregoing violations were willful. Defendant knew it was required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on the Background Check Class members.  By failing to do so Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).  Defendant knew or should have known about its legal obligations under the FCRA.  These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.  Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

68.     Defendant's willful conduct is also reflected by, among other things, the following facts: Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful; Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA, case law, and the plain language of the statute; and, finally, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally, the consumer reporting agency that provided Plaintiff's consumer report information to Defendant (Justifacts) has published numerous FCRA-related articles and compliance self-help materials and made them available to Defendant through its website, including as the FCRA's stand-alone disclosure requirement. *See, e.g.*,

https://www.justifacts.com/pdfs/Justifacts-Understanding-the-FCRA-Guide-for-Employment-Purposes-12-23-2013.pdf; *see also* https://www.justifacts.com/resourcetype/faqs/ ("A disclosure is a standalone document stating that you are going to be performing a background check on an applicant. This form must be provided to the applicant prior to conducting any background screening. Additionally, applicants must complete and sign an authorization form that permits you to conduct a background check on the applicant."). Thus, Defendant was aware of its disclosure obligations under the FCRA, or at least should have been.

69.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

70.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## THIRD CLAIM FOR RELIEF
### Failure to Obtain Proper Authorization in Violation of
### FCRA  15 U.S.C. § 1681b(b)(2)(A)(ii)

71.     Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

72.     Defendant violated the FCRA by procuring and using consumer reports relating to Plaintiff and other Background Check Class members without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

73.     The foregoing violations were willful. Defendant acted in deliberate or

reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission. Defendant obtained or had available substantial written materials, which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

74.     Defendant's willful conduct is also reflected by, among other things, the following facts: Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful; Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA, case law, and the plain language of the statute; and, finally, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and, finally, the consumer reporting agency that provided Plaintiff's consumer report information to Defendant (Justifacts) has published numerous FCRA-related articles and compliance self-help materials and made them available to Defendant through its website, including as the FCRA's stand-alone disclosure requirement. *See, e.g.*, https://www.justifacts.com/pdfs/Justifacts-Understanding-the-FCRA-Guide-for-Employment-Purposes-12-23-2013.pdf;                          *see            also* https://www.justifacts.com/resourcetype/faqs/ ("A disclosure is a standalone document

stating that you are going to be performing a background check on an applicant. This form must be provided to the applicant prior to conducting any background screening. Additionally, applicants must complete and sign an authorization form that permits you to conduct a background check on the applicant."). Thus, Defendant was well aware of its disclosure and authorization obligations under the FCRA, or at least should have been.

75.     Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2).

76.     Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

77.     WHEREFORE, Plaintiff, on behalf of himself and the Putative Classes, prays for relief as follows:

a)      Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

b)      Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Classes;

c)      Issuing proper notice to the Putative Classes at Defendant's expense;

d)      Declaring that Defendant committed multiple, separate violations of the FCRA;

e)      Declaring that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f)      Awarding statutory damages as provided by the FCRA, including punitive damages;

g)      Awarding reasonable attorneys' fees and costs as provided by the FCRA;

h)      Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

78.     Plaintiff and the Putative Class demand a trial by jury.

DATED this 12th day of Octoberr, 2016

/s/Brandon J. Hill
**LUIS A. CABASSA**
Florida Bar Number: 0053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: jriley@wfclaw.com
**Counsel for Plaintiff**

22

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 12th day of October, 2018, the foregoing was electronically filed using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Brandon J. Hill*
**Brandon J. Hill**