**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MARY DUKES, individually and
on behalf of all others similarly situated,**

      **Plaintiff,**

**v.**                                   **Case No.: 8:18-cv-02176-EAK-JSS**

**AIR CANADA,**

      **Defendant.**
_____/

**JOINT MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, MARY DUKES (the "Named Plaintiff"), and Defendant, AIR CANADA ("Defendant") file this Joint Motion (the "Motion"), with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the Settlement Agreement between the Named Plaintiff, the putative class, and Defendant; (2) preliminarily certifying a class for settlement purposes only; (3) approving the form and manner of notice to the class; (4) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (5) approving the settlement in a subsequent Order. In support of the Motion, the Parties respectfully submit the following:

**I.**        **BACKGROUND AND OVERVIEW OF SETTLEMENT**

On or about July 30, 2018, Named Plaintiff Mary Dukes filed this class action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair Credit Reporting Act on behalf of herself and on behalf of a proposed class of similarly situated individuals. Plaintiff filed her Amended Complaint on October 12, 2018 (*see* Doc. 17), after which the parties engaged in discovery. Then, on March 7, 2019, the Parties filed a notice of settlement with the Court. On

1

April 7, 2018, the Court issued its Endorsed Order that due to the parties Notice of Settlement the case was dismissed without prejudice pending settlement (*See* Doc. 28). The Parties have since established an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant.

The settlement provides for settlement payments to be made to approximately 1,275 members who are a part of the 15 U.S.C. § 1681b(b)(b)(2) class including a subset of approximately 23 class members in a 15 U.S.C. § 1681(b)(b)(3) subclass. The Agreement calls for the creation by Defendant of a common fund for Class Members consisting of $100,000. The Class Members will not be required to take any action to receive a settlement amount, making it a "claims paid" settlement for the class and the subclass. Members of the class (who do not opt out) will receive a *pro rata* gross amount of the settlement fund totaling approximately $77.41. This gross amount is consistent with FCRA class action settlements that have been approved by other federal courts. If the requested amounts are granted for attorneys' fees and a Class Representative service award, Plaintiff anticipates that each (b)(b)(2) class member will receive a net payment of approximately $41.61, and each class members who is part of the (b)(b)(3) subclass will also net an additional $41.61.

If any money remains in the net settlement fund after these distributions because Class Members have not cashed their settlement checks within 60 days, those funds shall be shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region. The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

### A.    <u>Allegations included in Named Plaintiff's Complaint</u>

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes," and by also failing to provide pre-adverse notice before taking adverse action against applicants based on the contents of a consumer report.

Defendant is an airline providing aviation transportation services. Defendant conducts background checks on the majority of its prospective employees as part of a standard screening process as well as background checks on its current employees from time to time during the course of their employment. According to Plaintiff's First Amended Complaint, on or about April 30, 2018 Plaintiff applied for and was subsequently offered a position with Defendant subject to the completion of a background check. In April 2018, Defendant procured a consumer report on Plaintiff by using the services of a third-party vendor. Pursuant to the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report.

Additionally, Plaintiff alleged that following completion of the background check in late Defendant told Plaintiff that the job offer was revoked due to issues with her consumer report. However, prior to doing so, Plaintiff alleged Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by failing to first provide Plaintiff with a copy of the consumer report it obtained on her from its consumer reporting agency prior to taking adverse action against her.

Based on the foregoing alleged violations, Named Plaintiff asserted FCRA claims against Defendant on behalf of herself and a class of Defendant's employees and prospective employees. The Amended Complaint sought to have certified the following classes in regards to Defendant:

**Proposed Disclosure Form Settlement Class**: All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure.

Additionally, Named Plaintiff also sought to have the following class certified:

**Proposed Pre-Adverse Action Notice Subclass**: All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

## B.    <u>Defendant's Defenses</u>

Defendant asserted numerous defenses to the FCRA Litigation. Specifically, Defendant denied, and continues to deny, that it violated the FCRA with regard to the Named Plaintiff and/or any putative class members. Moreover, for example, Defendant asserted, and continues to assert, that Named Plaintiff and the alleged putative class members waived their rights to make claims of this type, are estopped from making these claims, and that they consented to the obtaining of the reports.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by the Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever.

The Settlement Agreement and this Joint Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.    **Procedural Background**

To initiate the action, Named Plaintiff filed her Complaint. Plaintiff was preparing to seek class certification by a Rule 23 Motion for Class Certification. However, the parties agreed to settle the matter pending this Court's approval. Defendant filed a Motion to Dismiss that it withdrew upon the filing of Plaintiff's Amended her Complaint. Defendant filed its Answer and Affirmative Defenses. During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Classes, information on Defendant's business, and the FCRA disclosure and authorization/consent forms received by the Named Plaintiff. The Parties filed a Notice of Settlement and this Court issued its Endorsed Order that due to the parties Notice of Settlement the case was dismissed without prejudice pending settlement.

### D.    **The Settlement Negotiations and Mediation**

The Parties reached a final agreement to settle and filed a Joint Notice of Settlement (*See* Doc. 27). This Court also issued its Endorsed Order dismissing the case without prejudice pending settlement. (See Doc. 28).

As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit A, for which they now seek Court approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class members. Importantly, this settlement does not preclude any of the individual Settlement Class members from opting-out of the class and pursuing their own claims, should they be so inclined.

## II.     THE PROPOSED SETTLEMENT

### A.     The Proposed Settlement Class

The Settlement Agreement defines the proposed Settlement Class "Settlement Class" means individuals who fit one or both of the class definitions set forth in the Complaint, namely "All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure," and "All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A)." The Settlement Class is made up of approximately 1,275 individuals (and includes 23 individuals with claims in both classes). The Settlement Class will not include any individuals who timely opt out of the settlement.

**B.**     <u>**Benefits to the Settlement Class and Named Plaintiff**</u>

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Class in exchange for Defendant's agreement to pay $100,000 as part of a settlement fund. This a "claims paid" settlement. Class members who do not opt out do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Class members who do not opt out will simply receive checks after final approval. If settlement checks are not cashed and after all administrative costs and expenses have been recouped, the Settlement Agreement provides for a donation to a *cy pres* recipient. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service award, the parties anticipate that each Disclosure Form Settlement Class Member will receive a net payment of approximately $41.61. And those belonging to the Pre-Adverse Action Notice Subclass will receive an additional approximate $41.61.

Mary Dukes, the Named Plaintiff, shall have, in addition to the claim provided her as a member of the Settlement Class, an additional claim in the sum of $5,000 as an Incentive Payment for the services provided to the Settlement Class in connection with the prosecution of this action if approved by this Court. The Settlement Agreement also provides that Plaintiff's Counsel's fees and service award for the Named Plaintiff are to come out of the fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to 1/3 of the fund as attorneys' fees and costs. Neither settlement approval nor the size of the settlement fund are contingent upon the full amount of any requested fees or class representative service award being approved.

### C.    <u>Administration of Notice</u>

The Parties will utilize a private, third-party vendor American Legal Claim Services, LLC 8475 Western Way, Jacksonville, FL 32256, to administer notice in this case.  The costs of administration will be paid from the settlement fund.

Within 10 days of the Court's preliminary approval of the Settlement Agreement, the Settlement Administrator shall mail the Short-Form Notice, attached to the Settlement Agreement as Exhibit B, by U.S. mail to all Settlement Class members.  The Notice Form shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class members' eligibility to recover their pro-rata portion of the settlement proceeds, and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed.  As stated above, Plaintiff agrees that Air Canada can recoup those costs from checks that settlement class members do not cash. Any remaining money in the settlement fund from uncashed checks would go to a mutually agreeable charity through a *cy pres* award.

The Notice shall inform Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so within 60 days; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after Defendant serves the required CAFA notices); and (6) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Class members who choose to opt out or object to the settlement may do so within 60 days of the Notice mailing date.  If the Court grants final

approval of the settlement, Defendant will transfer the net settlement fund to the Settlement Administrator within ten (10) business days of the Court's Final Order.  Settlement checks will be mailed to all Class members within 20 days after the Settlement Agreement becomes final and effective, which take place once it is clear that no appeals have been taken or all such appeals have been rejected.  To the extent any money remains in the net settlement fund from uncashed checks shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region.

   **D.** **Attorneys' Fees and Expenses**

   Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees and costs.  Class Counsel will file a separate motion seeking approval for fees and costs.  Defendant agrees to not oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

   **E.** **Class Action Fairness Act Notice**

   Defendant will cause notice of the proposed settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").  This will be done within ten days of the filing of the Parties' proposed Settlement Agreement.

**III.** **PRELIMINARY CLASS CERTIFICATION**

   As part of preliminary approval of the settlement, Plaintiff respectfully seeks certification of the Settlement Class for the purposes of settlement, as set forth below.  Defendant does not object to certification solely for the purpose of settlement, and does not otherwise join in this headnote III, A-B.

A.    **The Settlement Class Meets the Requirements of Rule 23(a)**

A court can certify a settlement class where the proposed class and proposed class representatives meet the four prerequisites in Federal Rule of Civil Procedure 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the three requirements of Federal Rule of Civil Procedure 23(b). Here, pursuant to Rules 23(a) and 23(b)(3), Named Plaintiff seeks certification of a defined settlement class (the "Disclosure Form Settlement Class") to consist of:

> All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure.

Plaintiff also seeks certification of a Pre-Adverse Action Notice Subclass to consist of:

> All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

Certification of a class under Federal Rules of Civil Procedure 23(a) and (b) is subject to a slightly different analysis where certification is contested than where, as here, a proposed settlement is under review. "In its preliminary assessment of the fairness of the proposed agreement, the Court must take care not to intrude upon the private settlement negotiations of the parties any more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and the costs of litigation." *Smith v. Ajax Magnethermic Corp.*, 2007 U.S. Dist. LEXIS 85551, at *14, 17-18 (N.D. Ohio Nov. 6, 2007); *see also La. Wholesale Drug Co. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.),* 2005 U.S. Dist. LEXIS 46189, at *14 (S.D. Fla. Mar. 17, 2005)

("All proposed classes must meet the requirements of Rule 23, but the fact of settlement can have an effect on the analysis.")

The proposed Settlement Class here meets the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy of representation

### 1.    <u>Numerosity</u>

The proposed class of approximately 1,275 individuals is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Court may find the numerosity factor satisfied if the Court concludes it would be difficult, inconvenient, and wasteful to attempt to join numerous plaintiffs into one case, using permissive joinder.  "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class members is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.,* 2013 U.S. Dist. LEXIS 130591, at *4 (No. 8:13-cv-1204-T-33TBM, M.D. Fla. Sept. 12, 2013) (*citing Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986)).

Further, the nature and size of the individual claims also make joinder impracticable. Under the FCRA if the Court determines that Defendant willfully failed to comply with the FCRA, as alleged in Named Plaintiff's Complaint, Defendant are liable for statutory damages (ranging between $100 and $1,000), and attorneys' fees and costs.  *See* 15 U.S.C. § 168ln.  As such, most of the members of the proposed class do not have claims which are sufficiently large for individuals to pursue on their own.  Courts have found modest claims such as these are well suited for class action. *Reardon v. ClosetMaid Corp.*, 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013) (FCRA class certification granted based on nearly identical claims).  Additionally, the judicial resources required to remedy the potential 1,275 FCRA claims against Defendant, as could be at

issue in this lawsuit, would be tremendous and wasteful.  Therefore, the Settlement Class of approximately 1,275 persons here is sufficiently numerous.

### 2.    <u>Commonality</u>

The United States Supreme Court recently clarified that to satisfy the commonality requirement of Rule 23(a), the plaintiff must "demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011) (*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982)). Courts in this Circuit have applied *Dukes* to the commonality analysis, but caution that *Dukes* does not set an impossible standard for commonality.  "[T]his prerequisite does not mandate that all questions of law or fact be common; rather, a single common question of law or fact is sufficient to satisfy the commonality requirement, as long as it affects all class members alike."  *Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *5-6 (*internal quotations and citation to Dukes*, 131 S. Ct. at 2556, *and others omitted*); *See also Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, at *26-27 (N.D. Ala. July 17, 2012) (*citing Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In the instant case, the essence of Named Plaintiff's claims posit that Defendant failed to provide sufficient notice to class members, pursuant to the requirements of the FCRA. Determining liability on these claims will require resolving numerous common questions of fact, including, but not limited to: (1) whether Defendant's FCRA disclosure satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); whether Defendant complied with 15 U.S.C. § 1681b(b)(3) when taking adverse action against applicants based on the contents of their consumer reports; and, (3) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.  *See* 15 U.S.C. § 1681n and § 1681s;

*see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 675 (D. Md. 2013) (granting final certification for the Settlement classes under the FCRA).

Over the years numerous FCRA classes have been certified in cases in which common documents or forms have been provided to class members, or when a defendant's purportedly uniform policies and procedures impacted class members in the same way. In such circumstances, courts have found a single common question of law or fact will suffice.  *See, e.g. Murray v. E*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc.,* 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investments, LLC,* 244 F.R.D. 502 (S.D. Ind. 2007) (same);  *Kudlicki v. Capital One Auto Fin., Inc.,* 241 F.R.D. 603 (N.D. Ill. 2006) (same)*;see also Serrano v. Sterling Testing Systems, Inc.*, 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010) (finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful); *Campos v. ChoicePoint, Inc*., 237 F.R.D. 478, 485 (N.D. Ga. 2006) (finding commonality and certifying FCRA class when defendant consumer reporting agency consistently and as a matter of policy failed to provide full file disclosures to consumers who requested them); *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009) (finding commonality and certifying FCRA class when consumer reporting agency sent allegedly misleading form letter to consumers who disputed information on their reports); *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492 (E.D. Pa. 2009) (same); *Gillespie v. Equifax Info. Servs., LLC*, 05 C 138, 2008 WL 4614327, *4 (N.D. Ill. Oct. 15, 2008) (finding commonality and certifying FCRA class when consumer reporting agency's standard procedure allegedly caused inaccurate reporting); *Williams v. LexisNexis Risk Mgmt. Inc*., 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (finding commonality

and certifying FCRA class when claim revolved around consumer reporting agency's procedures for notifying class members that adverse public record information about them was being reported).

The claims of the Settlement Class members are based on the same set, or a similar set, of operative facts. An award of damages to one Settlement Class member for a violation of the FCRA would justify the award of damages to the remaining hires in the same Settlement Class on the same legal theory, subject to the same defenses. Even if the award of damages were to vary slightly among class members (which it does not), the Eleventh Circuit has held that the presence of individualized damages does not prevent a finding of commonality. *See Allapattah Serv., Inc. v. Exxon Corp.*, 333 F. 3d 1248, 1261 (11th Cir. 2003). Accordingly, the requirement of commonality has been met.

### 3.    Typicality is Satisfied

Under Federal Rule of Civil Procedure 23(a)(3), typicality does not require identical claims:

> The focus of Rule 23(a)(3) typicality is whether the class representative's interests are aligned with the proposed class so as to stand in their shoes for the purposes of the litigation and bind them in a judgment on the merits. The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary.

"A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Rosario-Guerro*, 265 F.R.D. at 627 (*citing Busby v. JRHBW Realty, Inc.*, 513 F. 3d 1314, 1322 (11th Cir. 2008). The typicality requirement "is said to limit class actions to those fairly

encompassed by the named plaintiffs' claims." *GTE Co. of the Northwest v. EEOC*, 446 U.S. 318, 330 (1980).

In this case, the legal theory underlying the claims of the putative class members is virtually identical to the Named Plaintiff's FCRA claims. Here, all of the claims are based on a substantially similar, if not identical, set of facts and are grounded in the same legal theories; namely, that Defendant's FCRA form(s) failed to satisfy the requirements under the FCRA. The Class Representative's claims are "typical" of the Class and, consequently, the typicality requirement of Rule 23(a)(3) has been met. *See* FED. R. CIV. P. 23(a)(3); *see also Reardon v. Closetmaid Corp*., 2013 WL 6231606, at *16 (W.D. Pa. Dec. 2, 2013) (finding typicality with regards to pre-adverse action notice).

### 4.    Adequacy of Representation

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "This requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Mary Dukes, is adequate given that her interests are equivalent to those of the Settlement Class. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class members in prosecuting their claims and, in fact, participated actively in the FCRA litigation.

With respect to Class Counsel, the proposed attorneys have extensive class and collective action experience, as detailed in the declaration of Brandon J. Hill of Wenzel Fenton Cabassa, P.A. When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in FCRA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) (stating "in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.").

### B.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. As discussed below, the proposed Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because common questions of law or fact between the Parties predominate over individual questions, and class action is the best available method for adjudicating this controversy.

### 1.  Predominance

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be

resolved efficiently on a class-wide basis." *Battle*, 2013 U.S. Dist. LEXIS 29263, at *10-11 (*internal citations omitted*). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

Here, common questions of law and fact predominate. The central common issues in this case are whether Defendant's FCRA forms satisfy the notice and authorization requirements under the FCRA and whether Defendant complied with the FCRA's pre-adverse requirements and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate. *See Reardon v. Closetmaid Corp.*, 2013 WL 6231606, at *18 (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

### 2. **Superiority**

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3).

Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement

Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer,* 2012 U.S. Dist. LEXIS 63795, at *20 ("Given the small amount of damages for most class members in this case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy.  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *In re Checking Account Overdraft Litig.,* 275 F.R.D. 666, 679 (S.D. Fla. 2011).  Defendant's hires at issue in this Settlement Class come from stores in various states/regions of the country. So, rather than having separate lawsuits filed in different parts of the country in different courts by different putative class members, the Settlement Agreement -- if approved -- will instead allow all claims by the Settlement Class to be resolved in one case.  Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer v. Summit Partners, L.P.*, 2012 U.S. Dist. LEXIS 63795, at *21 (E.D. Tenn. May 7, 2012) (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *See Smith*, 2007 U.S. Dist. LEXIS 85551, at *12-14 (finding superiority under Rule 23(b)(3)); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *20-21 (same); *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims

unworthy of individual adjudication due to the amount at issue).  Concentrating all the potential

litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court

will avoid a multiplicity of suits while also conserving judicial resources and the resources of the

Parties. Thus, this proposed settlement is the most efficient means of resolving the FCRA claims

of the Named Plaintiff and Settlement Class members.

**C.**     **The Class Notice Meets the Requirement of Rule 23(c)**

**1.**     **Contents of Notice**

The Parties submit that the proposed Short Form Notice and Long Form Notice (hereinafter

"Class Notice"), a copy of which is attached to the Settlement Agreement as Exhibits B and C,

meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). That rule, in pertinent part,

provides as follows:

Under Federal Rule of Civil Procedure 23(c)(2)(B), the notice must concisely state in plain,

easily understood language:

> (i)     the nature of the action;
> (ii)     the definition of the class certified;
> (iii)     the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the
>           member so desires;
> (v)     that the court will exclude from the class any member who requests
>           exclusion;
> (vi)     the time and manner for requesting exclusion; and
> (vii)     the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Class Notice satisfies each of the foregoing requirements.  The Class Notice

summarizes the nature of the pending FCRA Litigation and the Settlement Agreement's essential

terms, and provides each Settlement Class member with an individualized, projected gross

settlement payment, exclusive of attorneys' costs and fees.  The Class Notice further discusses the

nature of the action, describes the Settlement Class definition, and informs Settlement Class

members of the Class claims and the Parties' contentions and defenses. The Class Notice also states that a Settlement Class member may enter an appearance through counsel. The right of the Settlement Class members to exclude themselves, and the time, manner, and process for doing so, will be prominently detailed in the Class Notice once known. The Class Notice also explains in clear terms that the Agreement, when approved, will be binding on all members of the Settlement Class who do not exclude themselves. The Class Notice also apprises the Class, among other things, that complete information regarding the Settlement Agreement is available upon request from Class Counsel. In addition, the Class Notice informs the Settlement Class of the request for the approval of Class Counsel's attorneys' fees to be paid from the common fund. *See* FED. R. CIV. P. 23(h). A website with the long-form notice will be created for class members with any questions, which will also include pertinent documents from this settlement.

## 2. **Manner of Notice**

As to the manner of giving notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin et al.,* 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

The Settlement Agreement provides that a Court-approved notice shall be mailed to the last known address of each Settlement Class member, as reflected in Defendant's records, or as instructed by the Settlement Class member through Class Counsel. The mailing and the fairness hearing will be timed in compliance with CAFA so that the members of the Settlement Class will

have not less than 90 days from the date of delivery of the mailing to object to the Settlement Agreement and to appear by counsel.  In the case of any returned envelopes, Defendant will forward these envelopes to such corrected addresses as the Claims Administrator may otherwise obtain based on a reasonable search.  The Parties submit that giving notice in this manner satisfies the "best notice practicable" test.

### D.   The Settlement is Fair, Adequate, and Reasonable

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial;  (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

As set forth above, continuing the FCRA Litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant.  Because this case settled not long after filing, Named Plaintiff had yet to survive class certification, and summary judgment.  Each of these phases of litigation presented serious risks, which the settlement

allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23-24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success").

In the FCRA context, the net *pro rata* Disclosure Form Settlement Class member recovery of $41.61, and an additional recovery of $41.61 for the Pre-Adverse Action Notice Subclass members, in this settlement is in line with per class member settlement amounts in similar cases under the FCRA.[1]  The Settlement therefore is within the range of other large-scale FCRA class

---

[1] *See, e.g. Simons v. Aegis Communications Group*, No. 2:14-cv-04012, Order Granting Preliminary Approval (W.D. Mo. Oct. 15, 2014) (ECF No. 29) (preliminarily approving improper disclosure settlement with payment of $35 per class member); *Townsend v. Sterling Jewelers Inc*., No. 1:13-cv-3903, Plaintiff's Motion for Final Approval of Class Action Settlement (N.D. Ill. August 15, 2014) (ECF No. 54) (requesting approval of pre-adverse action class claim where class members who submitted a claim form would receive $50) and T*ownsend*, Minute Entry Approving Settlement (N.D. Ill. Sept. 15, 2014) (ECF No. 58); Marcum v. Dolgencorp, Inc., No. 12-cv-108, Memorandum in Support of Joint Motion For Preliminary Approval of Settlement, (E.D. Va. Oct. 15, 2014) (seeking approval for settlement of inadequate disclosure claim with payments to class members of $53) and Marcum, Order of Preliminary Approval of Class Action Settlement (E.D. Va. Oct. 16, 2014) (ECF No. 78) (approving settlement); *Beverly v. Wal-Mart Stores, Inc*., No. 3:07-cv-469, Order Granting Final Approval (E.D. Va. May 1, 2009) (ECF No. 39) (approving settlement providing for $54 gross amount per class member).

action cases.  The Settlement was reached after contentious litigation, as well as after an all-day mediation that was followed by a series of post-mediation settlement discussions.  Defendant's deadline to respond to Named Plaintiff's Motion for Class Certification was also looming as the Court Ordered litigation stay was about to expire.

On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed.  Under the Parties' Settlement Agreement, the Settlement Class members can quickly realize a significant portion of their possible FCRA claims from the Settlement Fund, even if the amount is slightly less than the minimum that could have been recovered through successful litigation.  Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff supports the Settlement.  Class Counsel believes that the bulk of the other members of the Settlement Class will have a favorable reaction to the Settlement and not object to it once they have been advised of the settlement terms through a Court-approved certification and settlement notice.

IV.    **CONCLUSION**

***WHEREFORE***, the Parties respectfully request that the Court enter the attached Preliminary Approval Order, which has been negotiated by the parties as a material part of their Agreement.  This Preliminary Approval Order: (1) preliminarily approve the Agreement; (2) preliminarily certifies the above-described Settlement Class for settlement purposes; (3) approves the form and manner of Notice to Class and the right to Object to the Agreement; (4) schedules a

Fairness Hearing for the Final Consideration and approval of the Agreement; and (5) finally approves the settlement in a subsequent Order.


        DATED this 4th day of June, 2019.

**WENZEL FENTON CABASSA, P.A.**              **HOLLAND & KNIGHT LLP**

_/s/ Brandon J. Hill_                        _/s/ Charles Wachter_
**LUIS A. CABASSA**                          Bradford D. Kimbro
Florida Bar Number: 053643                   Florida Bar No. 908002
**BRANDON J. HILL**                          Joseph H. Varner, III
Florida Bar Number: 37061                    Florida Bar No. 394904
Wenzel Fenton Cabassa, P.A.                  Charles Wachter
1110 North Florida Ave., Suite 300           Florida Bar No. 509418
Tampa, Florida 33602                         Holland & Knight, LLP
Main No.: 813-224-0431                       100 N. Tampa St., Suite 4100
Facsimile: 813-229-8712                      Tampa, Florida 33602
Email: lcabassa@wfclaw.com                   Telephone: (813) 227-8500
Email: bhill@wfclaw.com                      Facsimile: (813) 229-0134
Attorneys for Plaintiff                      _Counsel for Air Canada_
                                             .

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 4th day of June, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**