**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MARY DUKES, individually and
on behalf of all others similarly situated,**

    **Plaintiff,**

**v.**                                                **CASE NO.: 8:18-cv-02176-EAK-JSS**

**AIR CANADA,**

    **Defendant.**
_____/

## JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On September 26, 2019, the Court granted the Parties' Joint Motion for Preliminary Approval of the class-wide settlement ("Settlement") of the Fair Credit Reporting Act ("FCRA") claims asserted against Defendant. (Doc. 40). The Magistrate Judge also entered an Order recommending the Parties' Joint Motion for Preliminary Approval be granted. (Doc. 38).

Notice has since been mailed to the 1,200 class members. Not a single Class Member objected to the settlement and only one person opted out. Given the Settlement's reasonableness, fairness, and adequacy, and the overall favorable reaction of the Class, following the Fairness Hearing Scheduled for January 16, 2020, the Court should grant Final Approval of the Settlement. A proposed Order granting this Motion is attached hereto as Exhibit A, and the Settlement Agreement is attached as Exhibit B. In support of their Joint Motion, the Parties respectfully submit the following:

    **I.**      **BACKGROUND AND OVERVIEW OF SETTLEMENT**

On or about July 30, 2018, Named Plaintiff Mary Dukes filed this class action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair Credit Reporting Act on

behalf of herself and on behalf of a proposed class of similarly situated individuals. Plaintiff filed her Amended Complaint on October 12, 2018 (*see* Doc. 17), after which the parties engaged in discovery. Then, on March 7, 2019, the Parties filed a notice of settlement with the Court. On April 7, 2018, the Court issued its Endorsed Order that due to the parties Notice of Settlement the case was dismissed without prejudice pending settlement (*See* Doc. 28). The Parties have since established an agreement that, if granted final approval by this Honorable Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant.

The settlement provides for settlement payments to be made to approximately 1,200 members who are a part of the 15 U.S.C. § 1681b(b)(b)(2) class including a subset of approximately 400 class members in a 15 U.S.C. § 1681(b)(b)(3) subclass. The Agreement calls for the creation by Defendant of a common fund for Class Members consisting of $100,000. The Class Members will not be required to take any action to receive a settlement amount, making it a "claims paid" settlement for the class and the subclass. Members of the class who did not opt out will each automatically receive a *pro rata* gross amount of the settlement fund totaling approximately $77.41. If the requested amounts are granted for attorneys' fees and a Class Representative service award, Plaintiff anticipates that each (b)(b)(2) class member will receive a net payment of approximately $41.61, and each class members who is part of the (b)(b)(3) subclass will also net an additional $41.61.

If any money remains in the net settlement fund after these distributions because Class Members have not cashed their settlement checks within 60 days, those funds shall be shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region. The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

A. **Allegations included in Named Plaintiff's Complaint**

This is a putative class action brought by Plaintiff against Defendant under the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. ("FCRA"). The lawsuit generally alleges that Defendant violated the FCRA by failing to comply with the FCRA's disclosure and authorization requirements related to consumer reports procured for "employment purposes," and by also failing to provide pre-adverse notice before taking adverse action against applicants based on the contents of a consumer report.

Defendant is an airline providing aviation transportation services. Defendant conducts background checks on the majority of its prospective employees as part of a standard screening process as well as background checks on its current employees from time to time during the course of their employment. According to Plaintiff's First Amended Complaint, on or about April 30, 2018 Plaintiff applied for and was subsequently offered a position with Defendant subject to the completion of a background check. In April 2018, Defendant procured a consumer report on Plaintiff by using the services of a third-party vendor. Pursuant to the FCRA, Defendant is required to disclose to its employees—in a document that consists solely of the disclosure—that it may obtain a consumer report on them for employment purposes, prior to obtaining a copy of their consumer report.

Additionally, Plaintiff alleged that following completion of the background check in late Defendant told Plaintiff that the job offer was revoked due to issues with her consumer report. However, prior to doing so, Plaintiff alleged Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by failing to first provide Plaintiff with a copy of the consumer report it obtained on her from its consumer reporting agency prior to taking adverse action against her.

Based on the foregoing alleged violations, Named Plaintiff asserted FCRA claims against Defendant on behalf of herself and a class of Defendant's employees and prospective employees. The Amended Complaint sought to have certified the following classes in regards to Defendant:

> **Proposed Disclosure Form Settlement Class**: All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure.

Additionally, Named Plaintiff also sought to have the following class certified:

> **Proposed Pre-Adverse Action Notice Subclass**: All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

### B.  **Defendant's Defenses**

Defendant asserted numerous defenses to the FCRA Litigation. Specifically, Defendant denied, and continues to deny, that it violated the FCRA with regard to the Named Plaintiff and/or any putative class members. Moreover, for example, Defendant asserted, and continues to assert, that Named Plaintiff and the alleged putative class members waived their rights to make claims of this type, are estopped from making these claims, and that they consented to the obtaining of the reports.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by the Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. The Settlement Agreement and this Joint

Motion are not, and shall not, in any way be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of Defendant, nor of any violation of any federal, state, or municipal statute, regulation, principle of common law or equity. However, Defendant agreed to resolve the FCRA Litigation through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C.   **Procedural Background**

To initiate the action, Named Plaintiff filed her Complaint. Plaintiff was preparing to seek class certification by a Rule 23 Motion for Class Certification. However, the parties agreed to settle the matter pending this Court's approval. Defendant filed a Motion to Dismiss that it withdrew upon the filing of Plaintiff's Amended her Complaint. Defendant filed its Answer and Affirmative Defenses. During the pendency of the FCRA Litigation, the Parties exchanged preliminary documents and information, including headcount data on the putative class members in the proposed Settlement Classes, information on Defendant's business, and the FCRA disclosure and authorization/consent forms received by the Named Plaintiff. The Parties filed a Notice of Settlement and this Court issued its Endorsed Order that due to the parties Notice of Settlement the case was dismissed without prejudice pending settlement.

### D.   **The Settlement Negotiations**

The Parties reached a final agreement to settle and filed a Joint Notice of Settlement (*See* Doc. 27). As a result of the agreement reached, the Parties agreed to enter into a settlement agreement (the "Settlement Agreement") attached hereto as Exhibit B, for which they now seek final Court approval. The Parties have agreed to fully and finally compromise, settle, and resolve any and all demands, claims, damages, and causes of action, present and future, arising from, related to, or based upon the FCRA Litigation as to the Named Plaintiff and all putative class

members. Importantly, this settlement does not preclude any of the individual Settlement Class members from opting-out of the class and pursuing their own claims, should they be so inclined.

  **E.**  <u>**Preliminary Settlement Approval is Twice Given.**</u>

On September 9, 2019 Magistrate Judge Julie S. Sneed entered a Report and Recommendation in which she recommended the Court grant the Parties' Joint Motion for Preliminary Approval of the attached class action settlement agreement and permit the parties to send out notice. (*See* Doc. 38). A few weeks later, on September 26, 2018 this Court entered an Order preliminarily approving the Settlement and preliminarily certified the Settlement Class for settlement purposes. (Doc. 40). As set forth below and in the attached declaration from the settlement administrator, notice then was mailed out. Importantly, no Class Members objected to the Settlement, the requested fees, costs, or incentive award sought, and only one person asked to be excluded.

  **F.**  <u>**Class Notice is Mailed Out**</u>.

More specifically as to notice, on or about October 22, 2019, notices of the proposed Settlement were mailed by third-party vendor American Legal Services LLC ("ALS") to the approximately 1,200 persons who constitute the Settlement Class. (*See* ALC Declaration ("ALC Decl.")). The notice mailed included Class Counsel's phone number and mailing address which Class Members were free to contact with general questions about the settlement, or to request exclusion from the settlement. The settlement administrator deemed that over 95% of the notices were delivered, zero Objections were made, and only one request for exclusion. ALC Decl., ¶¶ 9, 10. Both of these factors weigh heavily in favor of approving the settlement.

  **G.**  <u>**Class Member Reactions are Overwhelmingly Positive.**</u>

The objection and opt-out period closed on December 13, 2019. As of the date of this filing, there **zero** objections to the Settlement and only **one** person asked to be excluded from the settlement. (*See* ALC Decl. ¶¶, 9-10). Therefore, the Class Member's reaction to the Settlement was unquestionably positive.

### H. Relief to Be Provided After the Settlement Becomes Effective.

If the Settlement is granted final approval, Defendant will establish a $100,000 Common fund within ten (10) business days of the Effective Date. A $5,000 incentive for the Named Plaintiff, the costs of administration, and attorneys' fees and costs will come from the Common fund. The Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Members of the class who did not opt out will receive a *pro rata* gross amount of the settlement fund totaling approximately $77.41. If the requested amounts are granted for attorneys' fees and a Class Representative service award, Plaintiff anticipates that each (b)(b)(2) class member will receive a net payment of approximately $41.61, and each class members who is part of the (b)(b)(3) subclass will also net an additional $41.61.

If any money remains in the net settlement fund after these distributions because Class Members have not cashed their settlement checks within 60 days, those funds shall be shall be paid as a *cy pres* donation to Bay Area Legal Services, Inc., a non-profit organization that provides civil legal assistance to low-income residents in the Tampa Bay region. The proposed settlement is fair and reasonable, and should be granted preliminary approval by the Court.

### I. Attorneys' Fees and Expenses

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to thirty-three and one-third percent (33 1/3%) of the fund as attorneys' fees and costs. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant agrees that it

will not oppose the amount of fees and costs sought by Class Counsel, up to the percentage identified herein.

## MEMORANDUM OF LAW

Fed. R. Civ. P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

When examining the fairness, adequacy, and reasonableness of a settlement, the Eleventh Circuit requires a district court to examine a number of factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (*quoting Bennett*, 737 F.2d at 986), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). When evaluated under these factors, the Parties' settlement is fair, adequate, and reasonable.

    **A.**    **Success at Trial Is Uncertain.**

Significant obstacles and risk would face the members of the settlement class if this case were to proceed to trial. Further litigation would have been complicated, protracted, and expensive. Defendant asserted numerous defenses, which collectively increased the risk of the class being unable to establish liability and damages. The Settlement represents a gross recovery of almost $77.00 for each member of the Class, and a net recovery of almost $41.00. The monetary recovery for the Classes is substantial when compared to what the Classes would receive had the case been litigated to judgment. The FCRA provides for statutory damages of between $100 and $1000 for each willful violation. 15 U.S.C. §1681n(a)(1). This same range, $100-$1000, applies to all FCRA violations, including situations where a user obtains a credit report for no permissible reason, or where the consumer reporting agency willfully failed to ensure reasonable procedures were in place to ensure the accuracy of a report, or where the consumer reporting agency willfully reported information that it was statutorily forbidden to report. *See, e.g.* 15 U.S.C. §§ 1681e(b), 1681c(a), 1681b(a). Given the broad range of FCRA violations which can fall within the $100-$1,000 range and the fact that many of those violations are more egregious than those presented here, it is likely that, even at the end of successful litigation, each Class Member's recovery would be much closer to $100 than $1,000.

In sum, members of the Settlement Class face significant legal issues that make the likelihood of success at trial uncertain at best. The substantial risks inherent in this case strongly support settlement at this stage of litigation.

### B.     The Settlement Falls Within the Range of Recovery.

The second and third factors for assessing a settlement, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla.

1988). The range of possible recovery "spans from a finding of non-liability through varying levels of injunctive relief." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

The monetary *pro rata* gross amount of the settlement fund totaling approximately $77.41 per class member in this case is comparable and actually better than other FCRA class action settlements in the Middle District of Florida. *See, e.g. Speer v. Whole Foods Market Group, Inc.,* M.D. Fla. Case No.: 8:14-cv-03035-RAL-TBM, Doc. 68 (Judge Lazzara approved settlement of improper FCRA disclosure settlement with payment of gross payment of $40 per class member); *Figueroa v. Baycare Health System, Inc.,* M.D. Fla. Case No.: 8:17-cv-01780-JSM-AEP, Doc. 83 (Judge Moody approved settlement of improper FCRA disclosure settlement with gross payment of $42.30 per class member); *Smith v. QS Daytona, LLC,* M.D. Fla. Case No.: 6:15-cv-00347-GAP-KRS, Doc. 42 (Judge Presnell approved settlement of improper FCRA disclosure settlement with gross payment of $62.00 per class member).

The Settlement here is substantially better than the above cited cases. On one hand, there is a chance that Defendant (if found to be liable) could be assessed a judgment for between $100 - $1,000 to each member of the Settlement Class while, on the other hand, the Settlement Class, if unsuccessful, could receive nothing if Defendant prevailed. Under the Parties' Settlement Agreement the Settlement Class members can quickly realize a portion of their possible FCRA claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. In sum, the Named Plaintiff supports the Settlement.

And not a single class member objected to it. Thus, these factors weigh in favor of approval of the Settlement.

### C.     The Litigation Has Been Complex, Costly, and Substantive.

As explained by the Magistrate Judge's Report and Recommendation (Doc. 38, p. 4), trying this case would be lengthy and expensive and could result in appeals. This litigation was pending for more than a year and the parties underwent discovery prior to reaching an agreement. (Dkts. 2; 36 at 1.)  Thus, "the parties are well positioned to assess the strengths and weaknesses of this case and the benefits of the proposed Settlement Agreement. Thus, considerations of the complexity, expense, and duration of the litigation in conjunction with the stage at which settlement was achieved support approval of the Settlement."  (Doc. 38, p. 4) (*citing to Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, *6 (S.D. Fla. 2007) ("Were this matter to continue, numerous, complex issues of law would have to be resolved at the cost of considerable time and expense to the parties and the Court.").

### D.     There Has Been No Opposition to The Settlement.

None of the class members objected to the proposed settlement, and only one person asked to be excluded. Lack of objections is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *Allapattah Servs. v. Exxon Corp.*, CASE NO. 91-0986-CIV-GOLD/SIMONTON, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Camp v. City of Pelham*, No.: 2:10-cv-01270-MHH, 2014 U.S. Dist. LEXIS 60496, at *11 (N.D. Ala. May 1, 2014) (fact that no objections were received, "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted));

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections.'"). Here, there were no objections to the settlement submitted and only one person asked to be excluded.  Further, the participation rate among the class indicates acceptance of the settlement terms among the entire settlement class. Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

    E. **<u>Settlement Was Achieved Following Substantive Litigation</u>.**

As set forth above, the Parties have engaged in litigation, participated in discovery, and conducted arm's length settlement negotiations. This was not an example of a case in which the Parties agreed to settle promptly after the complaint was filed. Rather, the Parties have extensively analyzed the strengths and weaknesses of their respective claims and defenses, as well as the advantages and disadvantages of settlement. The Parties reached settlement after months of active litigation. Class counsel thus believes that the settlement is in the best interest of the settlement class. In short, all of the factors enumerated in this Circuit for determining whether a proposed settlement is fair, adequate, and reasonable support final approval in of the proposed Settlement.

    F. **<u>The Settlement is Not the Product of Collusion</u>.**

There is no evidence of collusion in this proposed settlement, and "[t]here is a presumption of good faith in the negotiation process. Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014); *see also Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *26-27 (M.D. Fla. Nov. 23, 2009) (upon showing of arm's length negotiation and lack of collusion, threshold for collusion standard satisfied); *Behrens*, 118 F.R.D. at 539 (a court "can rely upon the judgment of experienced counsel

and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel'") (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Here, all of the evidence reflects that the settlement was the product of arm's length negotiations. As noted above, the Parties reached a settlement after Plaintiff sought Rule 23 class certification, exchanging preliminary information on the class size, and participated in extensive settlement discussions. As such, the Court should find that the settlement is not the product of collusion. *See Bennett*, 737 F.2d at 987 ("In sum, the court has determined that the settlement has been achieved in good faith through arms length negotiations and is not the product of collusion between the parties and/or their attorneys. There is no evidence of unethical behavior, want of skill or lack of zeal on the part of class counsel."); *accord Behrens*, 118 F.R.D. at 539; *Canupp*, 2009 U.S. Dist. LEXIS 113488, at *27.

## MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS[1]

In their Joint Motion for Preliminary Approval, the Parties presented detailed justification for certification of the settlement classes under Rule 23(a) and 23(b)(3). (*See* Doc. 36). The Court's Preliminary Approval Order found that, for settlement purposes, the settlement class was proper under Rule 23(a) and 23(b)(3). (Doc. 40), as did the Magistrate Judge's Report and Recommendation. (Doc. 38). Since the Court's Preliminary Approval Order, no objections addressing certification issues have been received. As recognized in the Agreement and the Court's Preliminary Approval Order, the settlement class is appropriate for the reasons summarized in the Parties' Joint Motion for Preliminary Approval, and as set further set forth below.

### A. The Settlement Class Satisfies All Rule 23(a) Requirements.

#### 1. The Settlement Class Meets the Numerosity Threshold.

---

[1] Defendant does not object to certification for the purpose of settlement only, and does not otherwise join in this section A-B or the proposed Order.

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. The settlement class certified by the Court has approximately 2,009 members, thus exceeding the numerosity threshold at which joinder is impracticable. "While Rule 23 does not specify an exact number necessary to satisfy numerosity, the Eleventh Circuit has indicated that having more than 40 class plaintiffs is generally enough to satisfy the rule." *Klewinowski v. MFP, Inc.*, No. 8:13-cv-1204-T-33TBM, 2013 U.S. Dist. LEXIS 130591, at *4 (M.D. Fla. Sept. 12, 2013) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

## 2. The Class Members Share Common Questions of Law and Fact.

As more fully detailed in the Parties' Joint Motion for Preliminary Certification, the settlement class shares common questions of law and fact and alleges a similar harm. The claims of the Settlement Class members are based on the same set, or a similar set, of operative facts, including: (1) whether Defendant's Disclosure form satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A); (2) whether Defendant complied with 15 U.S.C. § 1681b(b)(3) when taking adverse action against applicants based on the contents of their consumer reports; and, (3) whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA, which is relevant to damages.  As indicated by the Report and Recommendation on the Parties' Joint Motion for Preliminary Approval, "[r]esolution of any one of these issues can be resolved as to the entire Settlement Class."  (Doc. 38, p. 7).

In sum, as a result of the similar nature of these facts and legal issues the class claims readily satisfy the commonality requirement of Rule 23(a)(2). *See, e.g., Murray v. E*Trade Fin. Corp.,* 240 F.R.D. 392, 396 (N.D. Ill. 2006) (finding commonality and certifying FCRA class when all class members received the same mailer); *Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D.295 (N.D. Ill. 2005) (same); *Walker v. Calusa Investements, L.L.C.*, 244 F.R.D. 502 (S.D.

Ind. 2007) (same); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 411 (E.D. Pa. 2010) (finding commonality where class members sought statutory damages under the FCRA and the case turned on whether the defendants' alleged conduct was willful).

### 3. Claims Have Arisen from Similar Legal and Remedial Theories.

This Court properly found in its Preliminary Approval Order that Rule 23(a)(3)'s demand for typicality has been satisfied by the Parties' showing that the class representatives' and class members' claims have arisen from similar legal or remedial theories. *See Klewinowski*, 2013 U.S. Dist. LEXIS 130591, at *6 ("The typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary," *citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (1982) *and Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 627 (M.D. Fla. 2010), *adopted by Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 2010 U.S. Dist. Lexis 15739 (M.D. Fla. 2010)) (internal quotations and citations omitted). No change to the claims has arisen since the Court entered its Preliminary Approval Order, and for these reasons the typicality requirement is satisfied.

### 4. The Dual Requirements of Adequacy Are Satisfied.

The adequacy requirement of Rule 23(a)(4) "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. Lexis 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008)). No objection or information contrary to the Court's Preliminary Approval Order has been raised contesting the ability of the class representative, Mary Dukes, and of Class Counsel to fairly and adequately protect the

interests of the class. Further, no evidence has arisen of an improper conflict of interest between the class representative and her counsel and any members of the settlement class. Class counsel is qualified to guide the class and there is no reason to doubt their ability to adequately prosecute the action. (*See* Doc. 38, p. 7, "Plaintiff's counsel understands the claims in this case and possesses class action experience.")

### B. The Settlement Class Satisfies the Requirements of Rule 23(b)(3).

As more fully detailed in the Parties' Joint Motion for Preliminary Approval, the settlement class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed class members predominate over questions affecting individual members and that class action is the best available method for adjudicating this controversy.

#### 1. Predominance.

Predominance is governed by an analysis of whether liability may be resolved on a class-wide basis. "Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions . . . In essence, the Court must determine whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Battle v. Law Offices of Charles W. McKinnon, P.L.*, No. 2:12-cv-14172-KMM, 2013 U.S. Dist. LEXIS 29263, at *10-11 (S.D. Fla. Mar. 5, 2013) (internal citations omitted). Though not a determination on the merits, a Rule 23(b)(3) analysis prevents the class from degenerating into a series of individual trials. *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996).

As set out in the Parties' Joint Motion for Preliminary Approval, here common questions of law and fact predominate. The central common issues in this case are whether Defendant's FCRA forms satisfy the notice and authorization requirements under the FCRA, whether

Defendant provided sufficient pre-adverse notice as required by the FCRA, and, if not, whether Defendant's failure to comply with the FCRA was willful. These common issues are the most important issues in the case, and can be decided uniformly for all Settlement Class members in broad strokes. Thus, class certification is appropriate. *See Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *18 (W.D. Pa. Dec. 2, 2013) (stating "[t]he fact that [defendant] may raise distinct factual defenses as to some members of [the class] based on the different reasons for which [defendant] allegedly declined to hire different [class] members is not fatal to the predominance requirement's fulfillment.").

### 2. Superiority.

The Court must also consider whether the superiority requirement has been met. In making this determination, the Court may consider, among other factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Of the approximately 1,200 class members none objected to the Settlement. This positive response rate and lack of objections demonstrates that there is significant interest in the collective resolution of these claims. Superiority is met with regard to these first two factors under the Federal Rule of Civil Procedure 23(b)(3) analysis. Given the low amount of damages for members of the Settlement Class in this case and the fact that there are common issues shared by the Settlement Class members, the individual interest in controlling the case through separate actions is relatively low. *See Kizer v. Summit Partners, L.P.*, No. 1:11-CV-38, 2012 U.S. Dist. LEXIS 63795, at *20 (E.D. Tenn. May 7, 2012) ("Given the small amount of damages for most class members in this

case and the fact that there are common issues shared by the class members, the individual interest in controlling the case through separate actions is relatively low.").

Furthermore, concentrating the litigation and settlement of this action in this forum is in the interest of judicial economy. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Larsen v. Union Bank, N.A.* (*In re Checking Account Overdraft Litig., MDL No. 2036*), 275 F.R.D. 666, 679 (S.D. Fla. 2011). Rather than having separate lawsuits filed in different parts of the state in different courts by different putative class members, the Settlement -- if granted final approval -- will instead allow all claims by the Settlement Class to be resolved in one case. Finally, under the Federal Rule of Civil Procedure 23(b)(3) superiority analysis, since the Court is asked to certify this action for settlement purposes only, to approve the Settlement Class it would not need to determine whether the class would be manageable for litigation purposes. *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *21 (approving class settlement under superiority analysis where "given that this matter did not go to trial, concerns regarding management of the class action are minor").

Hence, the superiority analysis under Federal Rule of Civil Procedure 23(b)(3) is met. *Jankowski v. Castaldi*, No. 01 Civ. 164 (SJF)(KAM), 2006 WL 118973, at *4 (E.D.N.Y. Jan. 13, 2006) (finding superiority where "the proposed class members are sufficiently numerous and seem to possess relatively small claims unworthy of individual adjudication due to the amount at issue). Concentrating all the potential litigation concerning the FCRA rights of Named Plaintiff and the Settlement Class in this Court will avoid a multiplicity of suits while also conserving judicial resources and the resources of the Parties. Thus, this proposed settlement is the most efficient means of resolving the FCRA claims of the Named Plaintiff and Settlement Class members.

For these reasons, Plaintiff respectfully submits to the Court that the prerequisites for certification have been met. Plaintiff further requests that the Court issue a final order certifying for settlement purposes and enter the attached proposed Final Order.

Dated this 6th day of January, 2020.

| HOLLAND & KNIGHT LLP | WENZEL FENTON CABASSA, P.A. |
|---|---|
| */s/ Charles Wachter* | /s/*Brandon J. Hill* |
| **Bradford D. Kimbro** | **LUIS A. CABASSA** |
| Florida Bar No. 908002 | Florida Bar Number: 0053643 |
| **Joseph H. Varner, III** | Direct Dial: (813) 379-2565 |
| Florida Bar No. 394904 | **BRANDON J. HILL** |
| **Charles Wachter** | Florida Bar Number: 0037061 |
| Florida Bar No. 509418 | Direct Dial: (813) 337-7992 |
| **Holland & Knight, LLP** | **Wenzel Fenton Cabassa, P.A.** |
| 100 N. Tampa St., Suite 4100 | 1110 N. Florida Avenue, Suite 300 |
| Tampa, Florida 33602 | Tampa, Florida 33602 |
| Telephone: (813) 227-8500 | Main Number: (813) 224-0431 |
| Facsimile: (813) 229-0134 | Direct Dial: (813) 379-2565 |
| ***Counsel for Air Canada*** | Facsimile: (813) 229-8712 |
| | Email: lcabassa@wfclaw.com |
| | Email: twells@wfclaw.com |
| | ***Attorneys for Plaintiff and the Class*** |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of January, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**