UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY DUKES,

    Plaintiff,

v.                                                         Case No: 8:18-cv-2176-T-60JSS

AIR CANADA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Joint Motion for Final Approval of Class Action Settlement (Dkt. 42) and Plaintiff's Unopposed Motion for Award of Class Representative Service Award, and for Attorneys' Fees and Costs (Dkt. 43). On January 16, 2020, the Court held a fairness hearing. For the reasons stated at the hearing and explained herein, the Court recommends that both motions be granted.

## BACKGROUND

Plaintiff, on behalf of herself and others similarly situated, filed this class action against Defendant for violations under the disclosure, authorization, and adverse action provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(2)(A)(i), 1681b(b)(2)(A)(ii), 1681b(b)(3)(A). (Dkt. 17.) Plaintiff alleged that Defendant obtained consumer and background reports on Plaintiff, Defendant's employees, and prospective employees, and took adverse action against employees, without making the statutorily required disclosures. (Dkt. 17.)

On March 7, 2019, Plaintiff filed a notice of settlement (Dkt. 27), and, on June 4, 2019, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement. (Dkt. 36.) In doing so, the parties agreed to the following class (the "Disclosure and Authorization Class"):

> All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure.

(Dkt. 36 at 4.) Additionally, the parties agreed to the following subclass (the "Pre-Adverse Action Subclass"):

> All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

(Dkt. 36 at 4.) On September 6, 2019, the undersigned recommended granting the Joint Motion for Preliminary Approval of Class Action Settlement (Dkt. 38), which the Court did on September 26, 2019 (Dkt. 40.) On January 6, 2020, the parties filed the instant motions, seeking final approval of the class action settlement agreement (the "Settlement Agreement"). (Dkts. 42, 43.) The Court conducted a fairness hearing on January 16, 2019, during which the Court heard argument from the parties' counsel concerning why the Court should grant the motions. (Dkt. 46.) No objections to the Settlement Agreement were filed or raised at the fairness hearing.

## ANALYSIS

**I. Class Certification**

Federal Rule of Civil Procedure 23 sets forth the requirements for bringing suit as a class. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 622 (1997) ("Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is 'fair,' then certification is proper."); Fed. R. Civ. P. 23(c) advisory committee's note to 2003 amendment ("The provision that a class certification 'may be conditional' is deleted. A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification

until they have been met."). "Although the parties have consented to certification of a settlement class in this case, the Court must independently determine whether this case meets the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b), even if the certification is only for settlement purposes." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 676 (S.D. Fla. 2006); *Holman v. Student Loan Xpress, Inc.*, No. 8:08-CV-305-T23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009).

Under Rule 23, the four prerequisites to a district court's certification of a class are "numerosity, commonality, typicality, and adequacy of representation" of the class, and these prerequisites "are designed to effectively limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (internal quotations and citations omitted); Fed. R. Civ. P. 23(a)(1)–(4). Numerosity is generally satisfied when there are more than forty putative class members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Commonality is satisfied when there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Typicality is satisfied where there is "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Adequacy of representation is satisfied when "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation," and when "plaintiffs [do not] have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985). "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615-18 (1997)).

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to all class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Carter v. Forjas Taurus, S.A.*, 701 Fed. App'x 759, 765 (11th Cir. 2017) (per curiam). Importantly, when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Windsor*, 521 U.S. at 620.

Here, the Court recommends final certification of Plaintiff's putative class because the purported class meets all of the Rule 23(a) prerequisites and satisfies Rule 23(b)(3). Where, as here, parties reach a class action settlement agreement before the putative class is certified, a court must examine whether the putative class meets the prerequisites of Rule 23(a) and at least one of the types of classes under Rule 23(b). The Court already preliminarily approved the Disclosure and Authorization Class as follows:

> All Air Canada employees and job applicants who applied for or worked in a position at Air Canada in the United States and who were the subject of a consumer report that was procured by Air Canada within five years of the filing of this complaint [July 30, 2018] through September 6, 2018 and as to whom Air Canada used a noncompliant FCRA disclosure.

(Dkt. 38 at 1; Dkt. 40.) Additionally, the Court preliminarily approved the Pre-Adverse Action Subclass as follows:

> All Air Canada employees and job applicants in the United States against whom an adverse employment action was taken based, in whole or in part, on information contained in a consumer report within five years of the filing of this complaint [July

>30, 2018] through September 6, 2018 who were not provided a pre-adverse notice as required by 15 U.S.C. § 1681b(b)(3)(A).

(Dkt. 38 at 2; Dkt. 40.) The Court also preliminarily found that certification of the class and the subclass (collectively the "Settlement Class") was proper for settlement purposes. (Dkt. 38 at 9; Dkt 40.) Consistent with the Court's preliminary class certification, the Court recommends final certification of the Settlement Class. First, the numerosity requirement is satisfied as the proposed class size consists of "approximately 1,200 members." (Dkt. 42 at 2.) Next, commonality is satisfied because there is "at least one issue whose resolution will affect all or a significant number of the putative class members." *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotations omitted). Plaintiff alleges that she was the victim of a common practice by Defendant of obtaining consumer and background reports in violation of FCRA. (Dkt. 17.) The parties contend that some of the common questions of fact and law include (1) "whether Defendant's FCRA disclosure satisfies the notice and authorization requirements under 15 U.S.C. § 1681b(b)(2)(A)," (2) "whether Defendant complied with 15 U.S.C. § 1681b(b)(3) when taking adverse action against applicants based on the contents of their consumer reports," and (3) "whether Defendant acted willfully in its failure to satisfy the requirements under the FCRA." (Dkt. 42 at 14.) Resolution of any one of these issues can be resolved as to the entire Settlement Class.

Further, typicality is shown because Plaintiff possesses "the same interest and suffer[s] the same injury as the [Settlement Class] members." *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The alleged harm to the Plaintiff is the same as the alleged harm suffered by the Settlement Class members—"that Defendant's FCRA form(s) failed to satisfy the requirements under the FCRA." (Dkt. 36 at 15.) "[T]here is no variation in legal theory" between Plaintiff's claims and the claims of the Settlement Class. *See Kornberg*, 741 F.2d at 1337.

Finally, both components of the final requirement of Rule 23(a) are met. First, Plaintiff, as class representative, does not have interests antagonistic to the class. Rather, her interests align with the interests of the Settlement Class because Plaintiff and the Settlement Class seek redress of the same alleged wrongs. *See Fresco*, 2007 WL 2330895, at *2 (finding the first prong of the adequacy requirement satisfied because "[b]oth the Named Plaintiffs and the settlement class members share the common interest of protecting their . . . information," and "[e]ach settlement class member will benefit from the injunctive relief that will be provided by the proposed settlement"). Further, although Plaintiff will receive an incentive award (Dkt. 42 at 7), "the incentive award is not to compensate [Plaintiff] for damages but to reward [her] for [her] efforts on behalf of the Settlement Class." *Burrows*, 2013 WL 10167232, at *4. As to the second prong, Plaintiff's counsel understands the claims in this case and possesses class action experience. (Dkt. 42 at 16.) Plaintiff's counsel ("Class Counsel") has numerous years of experience litigating class actions and has been appointed class counsel in more than nine class action cases. (Dkt. 43-2 ¶¶ 6, 8–9.)

In addition, the requirements of Rule 23(b)(3) are met. Rule 23(b)(3) requires that the court find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 23(b)(3); *Amchem*, 521 U.S. at 623 (explaining that the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). In this case, given the nature of the alleged wrong and the value of each Settlement Class member's potential damages, there is no strong interest in each member bringing a separate action. Further, no evidence has been presented of other litigation brought by the Settlement Class members. The members of the Settlement Class

suffered the same alleged injury and seek relief under the same legal theory; thus, "[a]s a practical matter, requiring multiple actions by each [Settlement Class member] would be financially burdensome and judicially inefficient." *Holman*, 2009 WL 4015573, at *3. Accordingly, the Court recommends final certification of the Settlement Class for the purposes of settlement.

## II. The Proposed Settlement Agreement

### A. Notice to Class Members

Rule 23(e), governing the settlement of class claims, requires that the court "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). The notice must state, "clearly and concisely" and "in plain, easily understood language," the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

In this action, the parties submitted the proposed notice for the Court's review and approval. (Dkt. 36-1, Exs. A, B.) The Court approved the proposed form of notice ("Class Notices") after finding that the method of providing notice was reasonable. (Dkt. 38 at 10; Dkt. 40.) Thereafter, Defendant provided the settlement administrator, American Legal Claim Services, LLC ("Settlement Administrator"), with a list of 1,284 class members, "along with their respective mailing addresses and email addresses." (Dkt. 42-3 ¶ 4.) The Settlement Administrator used commercially reasonable means to ensure delivery was effective, including using the National

Change of Address Database. (Dkt. 42-3 ¶¶ 4–5.) On October 10, 2019, the court-approved Class Notices were mailed by First Class U.S. Mail to all 1,284 Class Members. (Dkt. 42-3 ¶ 6.) Of those notices, 221 were returned by the United States Postal Service, 159 of which "had forwarding information attached or an updated address was found using commercially reasonable means." (Dkt. 42-3 ¶ 8.) After remailing the returned notices, only 62 notices "were deemed undeliverable," which equates to a 95.17% successful delivery. (Dkt. 42-3 ¶¶ 8–9.)

The Class Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. (Dkts. 42-2, 42-3.) The Class Notices also directed recipients to the settlement website, www.dukesvaircanada.com, which contained additional information about the Settlement. (Dkt. 42-3 ¶ 12.) The Court finds that the notice to the class was reasonable and the best notice practicable under the circumstances, consistent with Rule 23(e) and Rule 23(c)(2)(B).

### B. Settlement Agreement

The parties contend that the Settlement Agreement "is fair, reasonable, and adequate." (Dkt. 42 at 7.) In evaluating whether a settlement is fair, reasonable, and adequate, a court considers: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition

to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)

Here, the Settlement Agreement is not the product of fraud or collusion but instead is the product of the parties' arm's-length negotiations aided by experienced counsel. (Dkt. 42 at 12.) Further, evaluating the likelihood of success at trial supports approval of the Settlement Agreement because Defendant asserts numerous defenses to Plaintiff's claims. (Dkt. 42 at 9.) Specifically, Defendant denies any FCRA violations and asserts defenses of waiver, estoppel, and consent. (Dkt. 42 at 4.) Therefore, "because success at trial is not certain for Plaintiff, this factor weighs in favor of accepting the settlement." *Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013).

As to the range of possible recovery, the parties contend that Plaintiff could receive nothing if Defendants' defenses prevail. (Dkt. 42 at 10.) In her Amended Complaint, Plaintiff sought to recover statutory damages of not less than $100 and not more than $1,000 for each alleged violation under FCRA and punitive damages. (Dkt. 18.) The Settlement Agreement provides that Defendant agrees to a common settlement fund of $100,000, to be distributed pro rata to Settlement Class members. (Dkt. 20 at 2.) As of December 19, 2019, only one person has opted to exclude themselves from the class settlement. (Dkt. 42-3 ¶ 10.) Assuming the Court grants Plaintiff's Unopposed Motion for Award of Class Representative Service Award, and for Attorneys' Fees and Costs, each Disclosure and Authorization Class Member will receive approximately $41.61 and each Pre-Adverse Action Subclass Member will receive an additional, approximately $41.61. (Dkt. 42 at 2.) This represents a reasonable recovery for class members.

With regard to the fourth and sixth factors of consideration, trying this case would be lengthy and expensive and could result in appeals. This litigation has been pending for more than

a year and the parties have undergone months of discovery. (Dkts. 2; 42 at 11.) At the hearing, the parties noted that they conducted extensive discovery regarding the size of the class, the specific disclosures, and the issue of willfulness. Additionally, the parties noted that avoiding trial will save significant time and expenditure in pre-trial litigation and discovery. The parties are well positioned to assess the strengths and weaknesses of this case and the benefits of the proposed Settlement Agreement. Thus, considerations of the complexity, expense, and duration of the litigation in conjunction with the stage at which settlement was achieved support approval of the Settlement Agreement. *See Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, *6 (S.D. Fla. 2007) ("Were this matter to continue, numerous, complex issues of law would have to be resolved at the cost of considerable time and expense to the parties and the Court."); *Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.*, No. 8:03-CV-2246-T-23TGW, 2006 WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). Finally, the Court has considered the lack of any opposition or objection to the Settlement Agreement. Although one class member excluded himself from the settlement, no one filed an objection or appeared at the fairness hearing to object to the settlement. Thus, the Court finds the Settlement Agreement to be a fair, adequate, and reasonable resolution of the class members' claims and therefore recommends approving the Settlement Agreement.

**III.    Attorneys' Fees and Costs, and Class Representative Award**

    **A.    Attorneys' Fees and Costs**

In Plaintiff's Unopposed Motion for Award of Class Representative Service Award, and for Attorneys' Fees and Costs (Dkt. 43), Plaintiff's counsel requests attorneys' fees and costs in

the amount of $33,333.33, which is equal to 33.3% percent of the Settlement Fund. (Dkt. 43 at 9.) Defendant agreed not to oppose a fee award of up to 33.3% of the common fund. (Dkt. 43 at 7.)

To determine attorneys' fees "in a case involving a class action settlement that created a reversionary common fund, [the Eleventh Circuit] held that 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 770, 774-75 (11th Cir. 1991)). The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This "benchmark" "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. Those circumstances include the twelve factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), namely:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions involved;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the client;
> (12) awards in similar cases.

*Id.* at 772 n. 3 (citing *Johnson*, 488 F.2d at 717-79). "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, . . . and the economics

involved in prosecuting a class action." *Id.* at 775. "In most instances, there will also be additional factors unique to a particular case, which will be relevant to the district court's determination. Having reviewed the efforts expended by Class Counsel, the undersigned finds that an award of 33.3% of the Settlement Fund for attorneys' fees and costs is reasonable under the circumstances of this case, as explained below.[1]

### 1. Time and Time and Labor Required

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, . . . they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717. Here, Class Counsel attests to having spent a "significant amount of time and labor required to bring this matter to settlement." (Dkt. 43 at 12.) However, Class Counsel has not provided detailed declarations or billing records. As courts have noted in similar cases, "[t]he vague assertions in Class Counsel's declarations and the lack of detail in their billing records make it difficult to determine the reasonableness of the hours expended in this litigation." *Edwards v. Horizon Staffing, Inc.*, No. 1:13-CV-3002-WSD, 2015 WL 13283397, at *8 (N.D. Ga. Jan. 2, 2015). Nonetheless, Class Counsel has identified several areas of significant work, including motion practice and discovery in this case. (Dkt. 43 at 12.) Indeed, at the fairness hearing, the parties discussed the extensive pre-trial discovery that was conducted regarding the size of the class, the specific disclosures, and the issue of willfulness. Additionally, Class Counsel has agreed to "oversee the Settlement to ensure that Class Members receive their Settlement benefits, and will continue to respond to inquiries from Class Members." (Dkt. 43 at 12.) Several courts have noted that "such an additional undertaking as an important factor in determining an award of attorneys' fees." *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV-DIMITROULEAS/SNOW, 2018 WL 5905415, at 2 (S.D. Fla.

---

[1] Plaintiff does not argue, and the Court does not find, that the following factors apply in this action: the nature and length of the professional relationship or time limitations imposed.

Nov. 9, 2018). Thus, the Court finds that the time and labor devoted to this case weighs in favor of the requested fee award.

        **2.      Novel and Difficult Issues**

This Court must next consider whether the questions in the case were novel or difficult. "Cases of first impression generally require more time and effort on the attorney's part." *Johnson*, 488 F.2d at 717. This action, which involved technical violations of FCRA, was not a case of first impression. However, "courts in this District have acknowledged the complexity and difficulty of class action FCRA cases." *Williams v. Naples Hotel Grp., LLC*, No. 6:18-cv-422-Orl-37DCI, 2019 WL 3804930, at *3 (M.D. Fla. July 29, 2019). In addition, Plaintiff would have had to prove that Defendants willfully violated FCRA. *See, e.g.*, *Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *8 (E.D. Mich. Jan. 23, 2017) ("[T]o recover statutory damages, Plaintiffs would have to show that Kelly willfully violated the FCRA."). The Court therefore concludes that this factor weighs in favor of the requested fee award.

        **3.      The Skill of Class Counsel**

The next relevant factor is "[t]he skill requisite to perform the legal service properly." *Johnson*, 488 F.2d at 718. This requires the Court to "closely observe the attorney's work product, his preparation, and general ability before the court." *Id.* "The trial judge's expertise gained from past experience as a lawyer and [her] observation from the bench of lawyers at work become highly important in this consideration." *Id.*; *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level"). The undersigned finds Class Counsel to be sufficiently skilled to justify the requested fee award.

Class Counsel has several years of litigating class action cases and has been named as class counsel in at least nine other class actions, eight of which were FCRA cases. (Dkt. 43-2 ¶¶ 6, 8–9.) Additionally, Class Counsel has demonstrated skill in the prosecution and settlement of this case. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1208 (S.D. Fla. 2006) (explaining that "skill may be measured by evaluating the degree of prudence and practicality exhibited by counsel at the beginning of the case" and may "through arduous preparation and efficient organization") (citing *Norman*, 836 F.2d at 1300); *see also Norman*, 836 F.2d at 1300 ("From the beginning and throughout a case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model.") Further, federal courts have relatedly observed that "the quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (internal quotations and citation omitted). The result achieved in this case—which falls within the range of recovery in similar FCRA settlements—supports the conclusion that Class Counsel is skilled and well qualified.

### 4. Preclusion from Other Employment

The next *Johnson* factor also favors granting Class Counsel's request for attorneys' fees. The hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation. (Dkt. 43 at 15.) Thus, this factor also militates in favor of finding the requested fee reasonable.

### 5. Customary Fee

The Court must also assess whether the requested fee is customary for a case such as this, namely, a complex class action pursued on a contingency fee basis. The requested fee is consistent

with fee awards that have been granted in other FCRA class actions within the Eleventh Circuit. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1476 (N.D. Ga. 2019) (finding class counsel to be entitled to an award of 33% of the settlement fund); *see also In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *4 (N.D. Ga. June 6, 2019) ("Awards of up to 33% of the common fund are not uncommon in the Eleventh Circuit, and especially in cases where Class Counsel assumed substantial risk by taking complex cases on a contingency basis."). In addition, district courts in other circuits have concluded that similar fee awards are reasonable in FCRA class actions. *See Flores v. Express Servs., Inc.*, No. CV 14-3298, 2017 WL 1177098, at *3 (E.D. Pa. Mar. 30, 2017) ("Upon consideration of percentages granted in similar class action settlements, 32.96% of the total common fund is within the range of awards that support approval."); *Smith v. Res-Care, Inc.*, No. CV 3:13-5211, 2015 WL 6479658, at *7 (S.D.W. Va. Oct. 27, 2015) ("The Court finds 33% is a reasonable amount of the common fund under the percentage of common fund method.") Accordingly, Class Counsel's request for a fee award of 33.3% of the Settlement Fund is consistent with what courts have awarded in other FCRA class actions.

### 6. Type of Fee Arrangement

The sixth *Johnson* factor concerns the type of fee arrangement (hourly or contingent) entered into by the attorney. 488 F.2d at 718. "A contingency fee arrangement often justifies an increase in the award of attorneys' fees." *Behrens v. Wometco Enters.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988). As recognized in *Behrens*, without a contingent fee, "very few lawyers could take on the representation of a class client given the investment of substantial time, effort and money, especially in light of the risks of recovering nothing." *Id.* at 548.

Class Counsel assumed substantial risk in pursuing this case by agreeing to prosecute claims which, as noted above, presented significant legal issues and which were subject to several affirmative defenses that could have reduced the value of the case to zero. Class Counsel's risk was also amplified by the fact that it agreed to prosecute those claims on a pure contingency basis, meaning it would not receive any compensation for its work or reimbursement for out-of-pocket expenses if the class did not ultimately receive a recovery. Accordingly, the Court concludes that this factor weighs in favor of the requested fee award.

### 7. Results Obtained

The next factor which must be considered is the amount involved and the results obtained. In *Camden*, the Eleventh Circuit explained that "a common fund is itself the measure of success"; thus, "[the] monetary results achieved [in a particular case] predominate over all other criteria." 926 F.2d at 774 (citation omitted). Stated another way, the amount involved and results obtained is the "most important factor" in determining an award of attorneys' fees. *Allapattah Servs.*, 454 F. Supp. 2d at 1204-05.

Class Counsel recovered $100,000 for the benefit of all class members. The gross recovery for each class member is approximately $41.61 and an additional, approximately $41.61 for each subclass member. The Court finds that this is a reasonable recovery for the class members, particularly because Plaintiff would have been required to prove Defendants' willfulness. *See, e.g.*, *Schoebel v. Am. Integrity Ins. Co.*, 2015 WL 3407895, at *7 (M.D. Fla. May 27, 2015) (dismissing FCRA stand-alone disclosure case seeking statutory damages because alleged violation was not willful).

Further, the per-class member gross recovery is similar to, or exceeds, per-class member amounts that have been obtained in similar cases under FCRA. For example, in *Hillson v. Kelly*

*Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017), the district court characterized a gross recovery of $30 per class member in an FCRA case as a "good" result. In doing so, the district court surveyed results in other cases, stating that a recovery of $30 per class member

> appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33, $40, and $44).

*Id.* at *3. Thus, after conducting a review of similar FCRA class actions, the Court concludes that the results obtained in this case are reasonable and weigh in favor of the requested fee award.

### 8. Experience, Reputation, and Ability of the Attorneys

The ninth *Johnson* factor requires the Court to consider Class Counsel's experience, reputation, and ability, along with that of Defendants' counsel. This factor also favors granting the requested award of fees, as both Class Counsel and opposing counsel are experienced and respected lawyers with proven records of handling complex litigation, including class actions.

### 9. Undesirability of the Case

As explained above, this class action required representation by experienced counsel who agreed to take the case on a contingency-fee basis despite facing significant legal obstacles. The prospect of engaging in and financing protracted complex litigation without obtaining a favorable

recovery is not highly desirable. The Court finds that this factor weighs in favor of the requested fee award.

### 10. Awards in Similar Cases

As noted in section (5) above, the requested fee award is consistent with fee awards that have been granted in other FCRA class actions within the Eleventh Circuit.

### B. Service Award

"[I]ncentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class." *In re Domestic Air Transp. Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993). Incentive awards "are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see also In re Domestic Air*, 148 F.R.D. at 358 ("Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.") (quoting Manual for Complex Litigation § 30.41 n. 86 (2d ed. 1985)).

Plaintiff seeks an incentive award of $5,000.00. Class Counsel states that Mary Dukes "has taken an active role in this action, reviewing and analyzing documents and patiently providing input throughout the litigation process." (Dkt. 43-2 ¶ 15.) The Court finds that an incentive award of $5,000.00 to Ms. Dukes as the Representative Plaintiff is reasonable, consistent with the incentive awards approved in other class actions in this district, and adequately recognizes her efforts to obtain recovery for the Settlement Class. *See Campos v. ChoicePoint Servs. Inc.*, No. 1:03-cv-3577-WSD, 2007 WL 2001797, at *4 (N.D. Ga. July 5, 2007) (in FCRA class action, incentive award of $5,000 to class representatives was reasonable); *Hillis v. Equifax Consumer Servs., Inc.*, Nos. 1:04-cv-3400-TCB, 1:07-cv-314-TCB, 2007 WL 1953464, at *17 (incentive

award of $7,500 each to class representatives who produced documents and information, were deposed, and throughout 3-year litigation regularly met with class counsel to review and discuss status of litigation); *In re Domestic Air*, 148 F.R.D. at 357-58 (incentive award of $2,500 for each class representative who produced documents and $5,000 for each class representative who was also deposed were appropriate to recognize efforts of representative plaintiffs to obtain recovery for class).

Accordingly, it is **RECOMMENDED**:

1. The Joint Motion for Final Approval of Class Action Settlement (Dkt. 43) be **GRANTED** and the Settlement Agreement (Dkt. 43-2) be **APPROVED**.

2. Plaintiff's Unopposed Motion for Award of Class Representative Service Award, and for Attorneys' Fees and Costs (Dkt. 43) be **GRANTED**.

**IT IS SO REPORTED** in Tampa, Florida, on January 27, 2020.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record